**James M. SEATON, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–1284.**

United States Court of Veterans Appeals.

July 17, 1992.

As Amended July 21, 1992.

Before IVERS, Associate Judge.

MEMORANDUM DECISION

IVERS, Associate Judge:

James M. Seaton appeals an August 10, 1990, decision of the Board of Veterans' Appeals (BVA or Board). In that decision, the BVA denied the appellant's claim for service connection for herpes, hiatal hernia, Barrett's esophagus, duodenal ulcer, lung cancer, and Zenker's diverticulum; denied an increased rating for the veteran's service-connected dermatitis, currently rated at ten percent; and denied a compensable

rating for the veteran's service-connected bronchogenic cyst. The Secretary of Veterans Affairs (Secretary) has moved the Court for summary affirmance. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)). Because the Court finds that the BVA committed neither factual nor legal error in its adjudication of the veteran's claims for an increase for his dermatitis, for a compensable rating for his bronchogenic cyst, or for service connection for lung cancer, the Court affirms the decision of the Board denying these claims. However, for the reasons set forth in this decision, the Court vacates that portion of the Board's decision denying the veteran's claims for service connection for herpes, hiatal hernia, Barrett's esophagus, duodenal ulcer, and Zenker's diverticulum, and remands those matters for readjudication consistent with this decision.

The veteran served in the United States Army from February 1942 to January 1945. R. at 1. Shortly after entering the service, he was diagnosed as having a benign "mass" or "tumor" of the mediastinum which was monitored regularly by Army doctors during his years in service. R. at 4, 12, 16, 18, 38–39, 41–44, 47, 52, 54, 56–58, 61, 74–75, 77–78, 80, 86, 90, 93, 99, 102–03, 113, 116–18, 120, 122. (The mediastinum is the space in the chest between the pleural sacs of the lungs that contains all the viscera of the chest except the lungs and pleurae. *Webster's Medical Desk Dictionary* 417 (1986).) In addition to the follow-up examinations for the tumor, the veteran underwent treatment in service for a skin disease of the feet (R. at 19–21, 24–29, 73) and was referred for psychiatric evaluation. R. at 92. The impression of the psychiatrists was "schizoid personality, mild." R. at 97, 122–23.

In January 1945, the veteran was found unfit for military service because of the benign tumor, which was judged not to have existed prior to service but to have been incident to service and incurred in the line of duty. R. at 127. After his discharge from service, the veteran's tumor was often characterized and diagnosed by doctors as a benign bronchogenic cyst. R.

at 141, 149–50, 154, 157, 171. The earliest rating sheet of record, dated April 4, 1947, showed him to be service-connected from January 13, 1945, for "brochogenic [sic] cyst, benign". R. at 161. The rating sheet also showed the veteran as having a "schizoid personality", which was uncompensated because the "[c]ondition is ... a constitutional or developmental abnormality, not a disability within the meaning of Title I, Public No. 2, 73d Congress WW II V R 1(a), Part I, Par. 1(a)." *Id.; see* 38 C.F.R. § 4.9 (1991). A May 1950 rating decision granted service connection at thirty percent from January 1, 1950, for "[a]nxiety reaction, superimposed upon [c]yst [m]ediastinum." R. at 172. The rating board noted that a Veterans' Administration (now Department of Veterans Affairs) (VA) examination and a doctor's statement showed "that the veteran has developed anxiety reaction, superimposed upon cyst mediastinum[;] the latter is service-connected." *Id.*

Over the years, the veteran's thirty-percent rating for anxiety reaction, superimposed upon cyst mediastinum [which was called "bronchogenic cyst" again after 1970] has remained unchanged despite numerous examinations and claims for increase. R. at 186, 188, 193–94, 200, 220–21, 225, 241, 302–13. In 1986, the BVA evaluated the veteran's service-connected anxiety reaction and bronchogenic cyst separately, holding that the anxiety reaction should be continued at thirty percent but that the cyst was not shown to produce symptoms and did not warrant a compensable rating. R. at 302, 312. Furthermore, over the years, the veteran has had a service-connected rating for chronic dermatitis, which rating has fluctuated between ten percent and thirty percent. R. at 220–21, 225, 241, 245–50, 255–58, 273–76, 301–13.

To evaluate the veteran's most recent claims, i.e., those which are the subject matter of this appeal, the VA did not order an examination for the veteran, although it appears that, between the time of the Regional Office decision and the BVA decision, the veteran requested such an examination. R. at 345. Instead, the Board considered a summary of the findings of a 1989 private medical examination submitted by the veteran in support of his claim;

the Board also considered other evidence, including the report of a VA examination conducted in October 1985, VA outpatient treatment reports from the 1980's, and other older reports from both VA and private sources. *James M. Seaton,* BVA 90–27505, at 2–3 (Aug. 10, 1990). The 1989 private medical report from the Mayo Clinic, Jacksonville, Florida, was the first of many examinations over the years, including the 1985 VA examination, to show diagnoses for "diaphragmatic hernia, reflux esophagitis, probable Barrett's esophagus and a duodenal ulcer." R. at 330. (A "[p]robable hiatal hernia with esophageal reflux" was listed as an "[i]mpression" of a VA examining physician in 1983. R. at 269.) Other findings of the 1989 examination included "[a] small Zenker's diverticulum" and "[h]erpes [s]implex II." R. at 330–31. The report did not show a diagnosis of lung cancer and instead stated that biopsies revealed no evidence of cancer, although it was unclear whether the biopsies were taken in order to determine the presence of cancer of the lung or of other areas, such as the esophagus. R. at 330–31. There was no evidence at all in the record of a diagnosis of lung cancer.

In denying the veteran's claim for service connection for the ailments diagnosed in 1989, the BVA found that "[t]he post[-]service[-]reported herpes, hiatal hernia, Barrett's esophagus, duodenal ulcer, and Zenker's diverticulum are not causally related to a service-connected disability." *Seaton,* BVA 90–27505, at 6. The DISCUSSION AND EVALUATION section of the decision articulated this finding in more detail: "The post[-]service[-]reported herpes, hiatal hernia, Barrett's esophagus, duodenal ulcer, and Zenker's diverticulum developed independently and irrespective of the service-connected disabilities reported as anxiety reaction, dermatitis, and bronchogenic cyst." *Id.,* at 5. However, the Court finds no clinical or medical evidence in the record, including the 1989 report from the private clinic, to support this finding.

■ This Court has held that the BVA may not substitute its own opinion to support medical conclusions. *See Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991). "If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or citing recognized medical treatises in its decisions that clearly support its ultimate conclusions." *Colvin,* 1 Vet.App. at 175, citing 38 U.S.C. § 4009 (1988) (now § 7109) and *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990).

No conclusions were drawn in the 1989 private examination report about the relationship, if any, between the veteran's service-connected disabilities and his newly diagnosed ailments. For decades, the VA acknowledged a connection between the veteran's anxiety reaction and his bronchogenic cyst by evaluating them together. Earlier examination reports did not show any definite connections among the veteran's various other ailments. However, there was some evidence of possible connections. For example, as early as 1958, a VA neuropsychiatrist examined the veteran and rendered a diagnosis which showed that anxiety reaction can and did manifest itself in a variety of physical ways: "Anxiety reaction *manifested by* general weakness, slight tremor, nervous tension, restlessness, nausea and chest pain." R. at 175 (emphasis added). The same diagnosis was rendered by the VA in 1963. R. at 184. In addition, in-service examinations from the 1940's revealed that the veteran's mediastinal tumor was affecting his esophagus. For example, one report stated that "[c]hest film and fluoroscopy reveal a mass in the superior right mediastinum at the level of the ascending portion of the aortic arch which does not pulsate and *which displaces the esophagus posteriorly.*" R. at 57 (emphasis added). Another report noted "encroachment on the esophagus" (R. at 39); another, "compression of the esophagus" (R. at 62); another, "moderate indentation of the esophagus with some dilatation of the esophagus above the tumor mass" (R. at 117); and another, "some posterior compression of the esophagus". R. at 125.

■ The law provides that disabilities resulting proximately from service-connected

ailments shall be themselves service-connected. 38 C.F.R. § 3.310(a). Therefore, upon remand, the Court instructs the BVA to reconsider the relationship, if any, between the veteran's hiatal hernia, Barrett's esophagus, duodenal ulcer, and Zenker's diverticulum and any of his service-connected disabilities, but particularly his service-connected anxiety reaction and bronchogenic cyst. Furthermore, the Court instructs the BVA to reconsider the relationship between the veteran's herpes and any of his service-connected ailments, but particularly his service-connected dermatitis. Finally, in readjudicating these claims, the Court directs the BVA to provide reasons or bases for its conclusions in compliance with 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)) and with the standard articulated by this Court in *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990), and, where medical conclusions are made, the BVA is to support such conclusions with expert medical evidence rather than with the Board's own unsubstantiated opinion. *Colvin*, 1 Vet.App. at 174. If, in order to fulfill the requirements of the latter, the VA must conduct a thorough and contemporaneous examination of Mr. Seaton, which takes into account the records of prior medical treatment, such examination is to be accomplished. *See Green v. Derwinski*, 1 Vet.App. 121, 124 (1991).

Therefore, upon consideration of Secretary's motion for summary affirmance, appellant's informal brief, and a review of the record, it is the holding of the Court that Secretary's motion is granted in part and denied in part. Accordingly, that part of the BVA decision denying service connection for lung cancer and denying increased ratings for the veteran's service-connected dermatitis and bronchogenic cyst is AFFIRMED, and that part denying service connection for herpes, hiatal hernia, Barrett's esophagus, duodenal ulcer, and Zenker's diverticulum is VACATED and the case REMANDED for readjudication of those claims consistent with this decision. It is further held that summary disposition is appropriate because the case is one of relative simplicity, whose outcome is controlled by our precedents and is not reasonably debatable. *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990).