Citation Nr: 1522720 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 12-25 396 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Entitlement to a rating in excess of 10 percent for Osgood Schlatter's disease with degenerative joint disease (DJD) of the left knee. 


REPRESENTATION

Appellant represented by: To be clarified


WITNESSES AT HEARING ON APPEAL

Appellant and daughter


ATTORNEY FOR THE BOARD

T. Hal Smith, Counsel


INTRODUCTION

The Veteran served on active duty from October 1968 to October 1972. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from rating decisions of the Winston-Salem, North Carolina, Regional Office (RO) of the Department of Veterans Affairs (VA). 

A Travel Board hearing was held in March 2015 before the undersigned Veterans Law Judge (VLJ), sitting in Winston-Salem, North Carolina. A copy of the transcript of that hearing is of record. 

This appeal was processed using the Veterans Benefits Management System (VBMS). Accordingly, any future consideration of this appellant's case should take into consideration the existence of this electronic record. In addition to the VBMS file, there is a Virtual VA paperless claims file associated with the Veteran's claim. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required on his part. 


REMAND

The Board finds that additional evidentiary development is necessary before the Board can adjudicate the Veteran's claim. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the Veteran's claim so that he is afforded every possible consideration. 

The Veteran was afforded VA left knee examinations in January 2009 and November 2010. Since then, the Veteran has continued to be treated for left knee complaints as evidenced in the claims file. The most recent treatment records are dated in November 2011 when the Veteran was seen for chronic left knee pain and January 2012 when he was being fitted for a knee brace. 

At the March 2015 hearing, the Veteran and his daughter testified that his left knee symptoms had increased in severity. At the time of this hearing, he had not worked in two weeks in his job as an electrician due to knee problems. His symptoms included swelling and pain, and he reported dragging of the left leg. He limped and had some knee instability. He also reported circulatory problems which he associated with his knee disorder. His daughter stated his knee condition had deteriorated and that it was difficult for him to even walk. 

The records as it stands does not contain the objective testing/examination findings required for VA to determine the Veteran's present disability condition according to the proper diagnostic codes. 

VA's statutory duty to assist the Veteran includes the duty to conduct a thorough and contemporaneous examination so that the evaluation of the claimed disability will be a fully informed one. Green v. Derwinski, 1 Vet. App. 121, 124 (1991); see also Snuffer v. Gober, 10 Vet. App. 400 (1997). Assistance by VA includes providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on a claim. 38 U.S.C.A. § 5103A(d) (West 2014); 38 C.F.R. § 3.159(c)(4) (2014). When the medical evidence is inadequate, as it is here, VA must supplement the record by seeking an advisory opinion or ordering another medical examination. Colvin v. Derwinski, 1 Vet. App. 171 (1991) and Hatlestad v. Derwinski, 3 Vet. App. 213 (1992). 

Where an increase in the disability rating is at issue for an already service-connected disability, as it is here, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). The Board finds that, after all outstanding medical records are associated with the claims file, a contemporaneous and thorough VA examination as to the current severity of the Veteran's service-connected left knee condition is required to resolve the issue on appeal. See Colayong v. West, 12 Vet. App. 524, 532 (1999); Goss v. Brown, 9 Vet. App. 109, 114 (1996). The examination should also include an analysis regarding the relative loss of motion and function due to flare-ups and pain in the knee, as contemplated by DeLuca v. Brown, 8 Vet. App. 202 (1995). 

Furthermore, a May 2009 VA Form 21-22 (Appointment of Veterans Service Organization as Claimant's Representative) identifies the appellant's representative as The American Legion. However, review of the record reflects that the North Carolina Division of Veterans Affairs (NCDVA) has submitted documents on the Veteran's behalf over the years pertaining to the current claim. Moreover, at the recent Travel Board hearing in March 2015, the Veteran was represented by the NCDVA. A VA Form 21-22 in favor of the NCDVA is not of record. Thus, it is unclear to the Board who is currently representing the appellant in his appeal. Since the appellant's appeal is being remanded for the above noted contemporaneous examination, it would be beneficial, in addition, to clarify whether The American Legion or NCDVA is the appellant's currently appointed representative. 

Accordingly, the case is REMANDED for the following action:

1. The AOJ should contact the appellant and request that he clarify his representation. If the appellant wishes to appoint the NCDVA his representative (thus revoking any representation with The American Legion), the AOJ should instruct the appellant to execute and return to VA a VA Form 21-22 (Appointment of Veterans Service Organization as Claimant's Representative). 

2. Obtain any and all additional VA treatment records. Request authorization and consent to release information to VA for any private treatment facilities which provided treatment for the Veteran's left knee. If any records are unavailable, the Veteran's claims file must be clearly documented to that effect and the Veteran notified in accordance with 38 C.F.R. § 3.159(e) (2014). Note: It is specifically pointed out that the Veteran has testified that he continues to receive treatment at VA medical facilities in Fayetteville, North Carolina, and Wilmington, North Carolina. 

3. The Veteran should then be scheduled for an appropriate VA examination to determine the current severity of the Veteran's service-connected left knee disability. The entire claims file, to include a copy of this REMAND, must be made available to the examiner designated to examine the Veteran. All appropriate tests or studies (to include X-rays) should be accomplished and all clinical findings should be reported in detail. 

The examiner should set forth all current complaints and findings pertaining to the Veteran's service-connected left knee disability, to include neurological and/or circulatory impairment, if any. Range of motion and repetitive motion studies should be performed and should be expressed in degrees. Describe any functional limitation due to pain, weakened movement, excess fatigability, pain with use, or incoordination. Additional limitation of motion during flare-ups and following repetitive use due to limited motion, excess motion, fatigability, weakened motion, incoordination, or painful motion should be noted. If the Veteran describes flare-ups of pain, the examiner must offer an opinion as to whether there would be additional limits on functional ability during flare-ups. All losses of function due to problems such as pain should be equated to additional degrees of limitation of flexion and extension beyond that shown clinically. 

The examiner should also indicate whether there is recurrent subluxation or lateral instability of the left knee, and if so, the severity of any recurrent subluxation or lateral instability. 

Note: The Veteran is to be advised that failure to report for a scheduled VA examination without good cause shown may have adverse effects on his claim. 38 C.F.R. § 3.655 (2014). Examples of good cause include, but are not limited to, the illness or hospitalization of the claimant or the death of an immediate family member. If the Veteran fails to report to the scheduled examination, the AOJ should obtain and associate with the claims file a copy or copies of the notice or notices of examination sent to the appellant by the appropriate VA medical facility. 

4. Then, after ensuring compliance with the instructions above, and undertaking any additional development deemed necessary, readjudicate the increased rating claim, specifically considering whether separate ratings should be assigned for recurrent subluxation/lateral instability and/or limitation of knee extension. If the decision is adverse to the Veteran, issue a supplemental statement of the case and allow the appropriate time for response. Then, return the case to the Board. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate 

 (CONTINUED ON NEXT PAGE)

action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).